**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | |
|---|---|
| JENNIFER K. CHANCE, | ) CASE NO. 3:21-CV-00156-DAR |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) MAGISTRATE JUDGE |
| v. | ) CARMEN E. HENDERSON |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) **MEMORANDUM OPINION AND** |
| Defendant, | ) **ORDER** |
| | ) |

### I.  Introduction

Plaintiff, Jennifer Chance, seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. For the reasons set forth below, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

### II.  Procedural History

On February 7, 2019 and March 5, 2019, Chance filed applications for DIB and SSI respectively, alleging a disability onset date of January 23, 2018. (ECF No. 12, PageID #: 329–32). The applications were denied initially and upon reconsideration, and Chance requested a hearing before an administrative law judge ("ALJ"). (ECF No. 12, PageID #: 253). On June 15, 2020, an ALJ held a hearing, during which Chance, represented by counsel, and an impartial

1

vocational expert testified. (ECF No. 12, PageID #: 102). On July 9, 2020, the ALJ issued a written decision finding Chance was not disabled. (ECF No. 12, PageID #: 81). The ALJ's decision became final on November 24, 2020, when the Appeals Council declined further review. (ECF No. 12, PageID #: 70).

On January 20, 2021, Chance filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 13, 14, 16). Chance asserts the following assignment of error:

> The ALJ's residual functional capacity finding is insufficiently specific and therefore a violation of Social Security Rulings 83-12, 96-8p and 96-9p in regards to the sit/stand option and failure to include a limitation allowing use of an ambulatory device to maintain balance.

(ECF No. 13 at 2).

### III. Background

#### A. Relevant Hearing Testimony

Chance testified that she lives at home with her twenty-seven-year-old son and mother. (ECF No. 12, PageID #: 110). She testified that she could do household chores, make meals, and meet her own personal needs. (ECF No. 12, PageID #: 110–11). She stated that she does this all while sitting. (ECF No. 12, PageID #: 110–11). Chance can leave the house, pick up groceries after ordering them online, and go for short trips inside stores. (ECF No. 12, PageID #: 111–12). Chance uses a cane anytime she leaves the house and sometimes inside of the house. (ECF No. 12, PageID #: 112). In situations where she might need to walk longer distances, she brings her walker so that she can sit down at any time. (ECF No. 12, PageID #: 114–15). Chance stated that she cannot stand longer than 10 minutes, even with a cane. (ECF No. 12, PageID #: 129). She also testified that she has problems sitting due to pain. (ECF No. 12, PageID #: 121–22).

B.     **Relevant Medical Evidence**

The ALJ summarized Chance's health records and symptoms:

> The record shows treatment for the above severe impairments. In March 2018, it was noted that the claimant complained of pain in both feet, worse with ambulation (Ex. 2F/9). It was noted that her foot pain was likely due to structural changes resulting from obesity, although further testing was ordered (Ex. 2F/9). She was referred for x-rays and bariatric consultation (Ex. 2F/9). EMG was performed, showing mild peripheral neuropathy of the lower extremities (Ex. 29F/2). Examination at that time showed decreased vibration sensation in the lower extremities, negative straight leg raise testing, normal muscle tone and reflexes, and no weakness (Ex. 30F/3). She was independent in mobility, transfer, and ambulation, without an assistive device, and she was able to stand on heels and toes with difficulty, but was unable to walk on heels and toes (Ex. 30F/4). Diabetic foot examination was performed in April, showing normal findings (Ex. 5F/26). She was provided with an orthotic arch support (Ex. 5F/29). X-rays showed plantar enthesopathy on the right, but were otherwise unremarkable (Ex. 5F/32).
>
> Examination in August showed normal strength, reflexes, and sensation, and tenderness to palpation of the feet (Ex. 2F/12). It was noted that her gait was normal on a narrow base for body habitus, and she was not "really using cane" (Ex. 2F/14). She was seen for complaints of chronic leg pain in September (Ex. 2F/27). Lumbar MRI showed no evidence of disc herniation or canal or foraminal stenosis, although there was mild disc degeneration at L1-L2 (Ex. 2F/30). Examination showed normal reflexes, decreased range of motion in the left hip, right knee, and lumbar spine, with no muscle spasm (Ex. 3F/22). Her medications were adjusted (Ex. 2F/31). She reported decreased pain in her feet at a follow up in March 2019, although she continued to report parasthesia, along with tingling in the hands (Ex. 15F/3). Her medications were adjusted, and weight loss was again recommended (Ex. 15F/6). Stress testing in April 2019 showed normal findings, with no evidence of myocardial ischemia, and an ejection fraction of 74% (Ex. 12F/24).
>
> In August, she complained of sharp pains at night in her feet, denying weakness in the hands or feet, along with intermittent numbness and tingling in the hands, with no symptoms of low back pain (Ex. 21F/3). It was noted that she had lost about 20 pounds (Ex. 21F/3). Examination showed normal strength, although there was a stocking and glove distribution of decreased sensation in the upper and lower extremities (Ex. 21F/5). Her medications were adjusted,

> and she was advised to continue weight loss, with regular diet and exercise (Ex. 21F/6). She had complaints of bilateral knee pain and hip pain at an orthopedic consultation in March 2020 (Ex. 25F/6). Examination showed trace effusion, with tenderness to palpation, partially correctible varus deformity, and stable varus and valgus stress (Ex. 25F/7). Bilateral knee x-rays were performed, showing mild to moderate bilateral tricompartment degenerative/arthritic changes, greatest on the right, involving the medial compartment (Ex. 24F/2). She was provided with an injection to the right knee, and aquatic therapy was recommended (Ex. 24F/7). The claimant also attended chiropractic care due to her complaints of pain (Ex. 7F; 16F; 23F; 28F). A walker was prescribed in June 2019 (Ex. 17F).

(ECF No. 12, PageID #: 90–91).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. The claimant has the following severe impairments: obesity; lumbar degenerative disc disease; diabetes mellitus with neuropathy; bilateral knee osteoarthritis; and peripheral neuropathy (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing; occasional stooping, kneeling, crouching, and crawling; frequent gripping, grasping, handling, fingering, and feeling bilaterally; no exposure to extreme cold, vibration/vibrating tools, unprotected heights or moving mechanical parts; occasional operation of bilateral foot controls; no operation of a motor vehicle within the scope of employment; sit/stand option at will at the workstation that would not take her off task more than 10% of the workday-- essentially, jobs that can be performed either sitting or standing at the individual's option. Furthermore, she can use a cane for ambulation to/from the workstation and for prolonged ambulation. Finally, the claimant would be limited to simple, routine tasks in an

4

> environment free from fast-paced production work (such as an assembly line wherein all tasks must be completed within strict timeframes) with only simple work-related decisionmaking and few, if any, workplace changes.

(ECF No. 12, PageID #: 86–89).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the

claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id*.

### C.     Discussion

Chance raises one issue on appeal. She argues that the ALJ's RFC determination's lack of specificity violates SSR 96-8p and 96-9p.[1] Within this argument, the Court finds three sub-arguments. First, Chance argues that the RFC is insufficiently specific regarding her sit/stand option. Second, she asserts that the "decision did not proffer any support for departing from [Chance's] testimony, or contradicting any of [Chance's] alleged limitations." (ECF No. 13 at 16). Finally, she suggests that the ALJ's decision was inconsistent regarding Chance's use of a cane.

---

[1] Chance also states that the lack of specificity violates SSR 83-12. However, other than this conclusory statement, Chance neither provides any argument as to this regulation nor even cites to it again. The Court, therefore, does not address it. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (alteration in original) (citations omitted)).

First, Chance argues that the ALJ's determination that she can perform sedentary work with a "sit/stand option at will at the workstation that would not take her off task more than 10% of the workday" failed to meet the regulations because it was not defined with specificity. (ECF No. 12, PageID #: 89). SSR 96-8p defines RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis"— meaning eight hours a day, five days a week. When an RFC states that a claimant can do only sedentary work, it means she can do jobs that only require walking and standing occasionally along with other criteria. SSR 96-9p. When an ALJ determines that the claimant may need to alternate the required sitting by standing and possibly walking, she can include an alternate sitting and standing exception. *Id*. The extent of the exception "will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." *Id*. In these situations, it may be especially useful "to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." *Id*.

Chance suggests that stating that the sit/stand option was "at will" as long as it did not "take her off task more than 10% of the workday" is not specific enough. Additionally, she alleges that "[t]here is no specific evidence cited within the ALJ's decision which directly correlates with the RFC limit that the sit/stand option would not need [to] be exercised so frequently as to make the claimant off-task more than 10% of the workday." (ECF No. 13 at 15). The Commissioner responds that this RFC is sufficiently specific. The Court disagrees.

It is clear in this circuit that to comply with SSR 96-9p, "the ALJ need not include increments of time to be spent in each position under an at will sit-stand option." *Case v. Comm'r*

7

*of Soc. Sec.*, No. 1:12-CV-1148, 2013 WL 5707796, at *7 (N.D. Ohio Oct. 18, 2013) (citations omitted). Thus, a sit/stand option that is completely "at will" is sufficiently specific. *See id.* (finding an at will sit/stand option sufficient to comply with SSR 96-9p); *see also Perry v. Comm'r of Soc. Sec.*, 3:09-CV-1847, 2010 WL 7366775, at *4 (N.D. Ohio Sept. 27, 2010) (same). However, Chance's sit/stand option is not really akin to the typical "at will" restriction. "Given the generally recognized detrimental impact of a need to alternate positions on an individual's ability to remain on task in an unskilled sedentary job, an 'at will' sit-stand option that requires the individual to remain on task at least 90% of the workday is not 'at will' at all." *France v. Comm'r of Soc. Sec.*, No. 3:20-CV-2396, 2022 WL 465680, at *17 (N.D. Ohio Jan. 24, 2022). Because the "at will" aspect of the limitation is eroded by requiring her to remain on task 90% of the day, Chance's sit-stand option does not actually specify how often Chance can utilize it. Although the ALJ also stated that Chance could perform jobs that could be performed sitting or standing, the VE specifically testified that Chance could not work if she would be off task more than 10% of the time. (ECF No. 12, PageID #: 140). The ALJ included this in his RFC determination. It is unclear how often Chance can alternate positions before it takes her off task more than 10% of the time. As such, the Court "joins other courts in concluding that RFC limitations based on productivity levels / off-task behavior rather than the specific frequency of position changes are not compliant with SSR 96-p." *Id.* (collecting cases).[2]

Nonetheless, the Commissioner additionally argued that, even if the ALJ was not sufficiently specific, Chance waived this argument by failing to cross-examine the vocational expert ("VE") on this issue. Commissioner relies on the Sixth Circuit's unpublished decision in

---

[2] Notably, the Appeals Council has also remanded an ALJ's decision where that ALJ failed to "provide a rationale for finding the claimant would not be off task more than 10% of the workday while changing positions." (ECF No. 16 at 3).

8

*Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625 (6th Cir. 2012). Specifically, the Commissioner quotes this passage:

> Finally, Kepke argues that the ALJ failed to provide specifics (in the RFC and hypotheticals) as to the frequency of her need to alternate between sitting and standing. *See* Soc. Sec. Admin., SSR 96-9p, at *7, 1996 SSR LEXIS 6 at *19 (1996) ("The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."). Because Kepke failed to probe this alleged deficiency at the ALJ hearing, she forfeited this argument. *See Sims v. Comm'r of Soc. Sec.*, 406 Fed.App'x. 977, 982 (6th Cir. 2011) ("Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal.").

*Id.* at 636. Although this passage appears to support the Commissioner's argument, a closer look indicates otherwise. In *Kepke*, the court considered whether the ALJ erred in relying on the VE's testimony because the claimant argued that the ALJ's hypothetical did not adequately convey her limitations. *Id.* at 634–35. The claimant's specificity argument was the last in a list of arguments regarding the deficiency of the hypotheticals. *Id.* at 634–35. Notably, challenging the hypotheticals is a completely distinct argument from challenging the RFC. At Step Five, the ALJ relies on the VE's testimony by presenting hypotheticals to determine whether the claimant can perform a significant number of jobs. *See Nettleman v. Comm'r of Soc. Sec.*, 728 F. App'x 473, 477 (6th Cir. 2018). In contrast, the ALJ determines the claimant's RFC at Step Four and considers whether the claimant can perform any past work. 20 C.F.R. § 404.1520(a)(4)(iv). These are two separate inquiries.

Although the claimant in *Kepke* challenged both the hypotheticals and the sufficiency of the RFC, the Court reads the decision to state only that the hypothetical challenge can be waived.

9

In fact, the magistrate judge—whose decision was adopted in full and eventually affirmed by the Sixth Circuit—considered both arguments together and concluded that:

> There is case law in this circuit holding that the failure to probe a deficiency at the hearing waives that challenge on appeal. *See Sims v. Comm'r of Soc. Sec.*, 406 F. App'x. 977, 982 (6th Cir. 2011) ("Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal."). In the instant case, Plaintiff's attorney asked the VE several questions, by adding additional and mostly work-preclusive limitations. Plaintiff's attorney did not probe the alleged deficiency he now raises, even when the VE raised it in response to the attorney's line of questioning. I also suggest that in the instant case, the failure to include a frequency determination was not reversible error where the hearing transcript showed VE testimony visited this issue twice and the VE clarified the basis of the sit/stand option and its effect on the particular jobs to which the VE testified. Case law shows that the failure to define the sit/stand option in specific increments of time is not necessarily fatal to the ALJ's RFC and subsequent reliance on the VE testimony. *See generally Case v. Comm'r of Soc. Sec. Admin.*, 2013 U.S. Dist. LEXIS 150162, 2013 WL 5707796 (N.D. Ohio Oct. 18, 2013) ("To comply with the Ruling, the ALJ need not include increments of time to be spent in each position under an at will sit-stand option." Citations omitted.); *see also Cutting v. Astrue*, 2010 U.S. Dist. LEXIS 71937, 2010 WL 2595144 at *3 (D. Me. June 23, 2010) (not necessary to force ALJ to choose a specific interval of time for sit/stand option where "there is no medical evidence cast in such terms, when the need is found to be for sitting and standing at will, and when the vocational expert testifies that a specific job is available under those terms.").

*Kepke v. Comm'r of Soc. Sec.*, No. 13-13944, 2015 WL 348787, at *13 (E.D. Mich. Sept. 17, 2014). The Court reads this decision to conclude that the claimant waived her challenge of the hypothetical by failing to probe, but the RFC challenge simply lacked merit.

This reading of *Kepke* is bolstered by the fact that both the magistrate judge and appellate court cited to *Sims v. Comm'r of Soc. Sec.*, to support the conclusion that the claimant forfeited her argument by failing to probe the VE at the hearing. 406 F. App'x. 977, 982 (6th Cir. 2011). In

10

*Sims*, the claimant argued that the VE's testimony was unreliable because the hypothetical questions posed by the ALJ did not include all her limitations. *Id*. The court concluded that there was substantial evidence to support the hypotheticals and, moreover, the claimant had the opportunity to cross-examine the VE but did not probe the deficiency at the hearing. *Id*. Thus, the challenge that was deemed waived involved the hypotheticals posed to the VE necessary for the Step Five determination, not the RFC itself.

This is an important distinction. As noted, these are challenges to two separate steps in the ALJ's disability determination. It makes sense that before a claimant can challenge the hypotheticals posed to the VE, she should cross-examine the VE on the alleged deficiencies. It does not make sense—and the Court does not read *Kepke* or *Sims* to say—that a claimant must probe an RFC deficiency at the hearing before she can challenge it upon appeal. To hold otherwise would mean that a claimant could never object to an ALJ's RFC determination without first probing the VE on the related issue. The Court finds no such rule. *See France*, 2022 WL 465680, at *17 (remanding the case where the ALJ's RFC failed to comply with the regulations); *Jones v. Comm'r of Soc. Sec.*, No. 1:10-cv-840, 2012 WL 967509, at *5 (W.D. Mich. Feb. 8, 2012) (remanding the case where the ALJ did not include the use of a cane in plaintiff's RFC without requiring that the claimant first probe the VE); *Ripley v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 752, 765 (N.D. Ohio 2019) (considering claimant's argument that the ALJ failed to include key limitations in the RFC without discussing whether claimant first probed the VE).

The Court acknowledges that there are unpublished decisions from other districts that have interpreted *Kepke* to conclude that a claimant cannot challenge the specificity of a sit/stand option in the RFC without first probing the VE on the issue. *See Haas v. Comm'r of Soc. Sec.*, No. 4:16-cv-11817, 2017 WL 3836086, at *5 (E.D. Mich. Aug. 1, 2017) (relying on *Kepke* to conclude that

11

an RFC/frequency argument is waived if not probed at the hearing); *Smith v. Berryhill*, No. 1:18-CV-00115-LLK, 2019 WL 2997393, at *3 (W.D. Ky. July 9, 2019) (same). Neither of these cases, however, took a significant look at the context of the decision. As such, the Court does not find their reasoning persuasive. Moreover, in this district, a court recently remanded a decision where the claimant challenged the specificity of the ALJ's sit/stand option. *France*, 2022 WL 465680. Although the court did not discuss *Kepke* or the waiver issue, the court remanded the case where there was no indication that the claimant had probed the ALJ at the hearing. In fact, the court stated:

> The governing Social Security Rulings make it clear that a need to alternate between seated and standing positions will necessarily "erode" the baseline unskilled sedentary jobs that are available, and that "[t]he extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand." SSR 96-9p, 61 Fed. Reg. 34478, at 34482. ALJs are therefore advised to consult vocational resources for fact-specific testimony in these situations, based on "the frequency of the individual's need to alternate sitting and standing." *Id.*; *see also* SSR 83-12, 1983 WL 31253, *4 ("In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base."). But here, the ALJ did not seek the VE's opinion regarding the impact of specific sit/stand limitations on an individual's ability to remain on task in the specified jobs. Instead, he simply asked the VE to assume that any such limitations would not result in more than 10% off task behavior. This is not the manner in which the governing SSRs directed that vocational resources be used, and was directly contrary to the requirements of SSR 96-9p.

*Id.* at *19. It appears that the court put the burden on the ALJ to consult the VE for fact-specific testimony based on the frequency of the individual's need to alternate sitting and standing. The Court agrees with such a reading of the regulations. Therefore, the Court concludes both that the ALJ failed to satisfy SSR 96-9p and that Chance did not waive the argument by failing to probe the ALJ.

12

"An ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)). As such, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007). The ALJ's failure to follow this regulation clearly prejudiced Chance. Chance testified that she has significant limitations in her ability to sit and stated that she cannot stand for longer than ten minutes. (ECF No. 12, PageID #: 121–22, 129). Although the ALJ added a sit/stand option, he did so without making specific findings as to the degree of limitation he found evident. He did not even explain what evidence led him to believe that Chance's utilization of the sit/stand option would not result in being off task for more than ten minutes. "Given the general scarcity of jobs available in this context, as recognized in the SSRs . . . this avoidance of the specificity requirements in SSR 96-9p in questioning the VE was not harmless error." *France*, 2022 WL 465680, at *19. Accordingly, the Court recommends that this decision be vacated and remanded.

Because this sub-argument is sufficient to remand the case, the Court does not address Chance's remaining sub-arguments.

## VI. Conclusion

Because the ALJ failed to follow social security rulings, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

IT IS SO ORDERED.

13

Dated: April 7, 2022

                                                       *s/ Carmen E. Henderson*
                                                       CARMEN E. HENDERSON
                                                       U.S. MAGISTRATE JUDGE